[Civ. No. 8446. First Appellate District, Division Two.—April 27, 1932.]

In the Matter of the Estate of NELLIE F. GILHAM, Deceased. KELSEY M. GILHAM, Respondent, v. JESSIE CHITTENDEN et al., Appellants.

Fred A. Watkins and Gilbert D. Ferrell for Appellants.

Humphrey, Searls, Doyle & MacMillan, Morgan J. Doyle and H. B. Churchill for Respondent.

STURTEVANT, J.—This is a contest over the application of the defendant Jessie Chittenden to have admitted to probate the purported will of Nellie F. Gilham, deceased. The contest was filed by Kelsey M. Gilham, the son of the deceased. The defendant Jessie Chittenden answered the contest and a trial was had before the court sitting with a jury. At the end of the hearing the trial court submitted to the jury forms of several special verdicts, among others: "Question 1. Did Nellie F. Gilham subscribe her name at

116

the end of the instrument (contestant's exhibit 1) dated October 28, 1929? Answer. ——. (Note. If question 1 above is answered 'No' then the jury need not find as to any other question.)'' The jury answered ''No'' and a judgment in favor of the contestant was entered on the verdict. Later the defendants moved for a new trial, basing their motion on all of the statutory grounds. The motion was denied and the defendants have appealed and have brought up a bill of exceptions.

The defendants contend that the verdict is not supported by the evidence. They assert that the contestant introduced no evidence excepting the testimony of Mr. Chauncey McGovern, an expert witness, whereas the defendants introduced the testimony of the petitioner, Mrs. Jessie Chittenden, Mr. E. L. Geiger and his wife. Continuing, they assert that their witnesses were not in any way contradicted and therefore the verdict should be set aside.

The uncontradicted evidence is that on October 28, 1929, Mrs. Chittenden wrote the purported will. All disputes involve what happened thereafter. Mrs. Chittenden testified that about ten days later the decedent and Mr. and Mrs. Geiger were at the home of Mrs. Chittenden at Burlingame, in San Mateo County. As to what happened there on the morning of that date, she testified as follows: ''Mr. Geiger remained a few minutes and then said he would have to go on to work; this was around 10 o'clock in the morning; Nellie F. Gilham then said, 'Wait a moment I want you to do something for me before you go.' She then asked me to get the papers, 'that it was as good a time as any to sign them'. I did so, and she said to Mr. and Mrs. E. L. Geiger, 'I have made a little will and I want you to sign as witnesses.' Mr. Geiger then said, 'I would like to read this Aunt Nell before signing my life away.' She said 'All right.' I then said, 'Read it aloud, Mr. Geiger.' Mr. Geiger then read contestant's exhibit 1 aloud in full. When he had completed the reading he said, 'It does look like a will all right,' and Nellie F. Gilham said, 'Yes, it is my will,' and she signed her name to it. I then signed my name to the will and Mrs. Geiger signed and then Mr. Geiger signed his name to the will, contestant's exhibit 1. Mr. Geiger then bade us goodbye and left the house.'' Regarding the same incident Mr. Geiger testified: ''I stayed a few

minutes and was about to go when Nellie F. Gilham said, 'Wait a minute, Erb, I want you to do something for me,' then she turned to Jessie Chittenden and said, 'Jessie, get me those papers.' I said, 'What do you want me to do, Aunt Nell?' She said, 'I have made a little will and I want you and Mrs. Geiger to sign as witnesses.' Jessie Chittenden got the papers out of a drawer and placed them upon the table. I said, 'Before I sign my life away I would like to read it.' I picked it up and read it aloud. When I had finished I said, 'It does sound like a will,' and Nellie F. Gilham replied, 'It is my will.' I said, 'I think that you should see an attorney' and she said, 'Maybe, but it will be all right.' She then took the will and signed it. Jessie Chittenden then signed and my wife signed; I signed last. When this was done I left to go on to my work.'' Regarding the same incident Mrs. Geiger testified: ''We talked a bit and my husband, soon after he arrived, took leave to go to work. As he was doing so Nellie F. Gilham asked him to wait a moment, that she wanted him to do something. He asked what it was, and she replied, 'I want you and Mrs. Geiger to sign a will I have made.' She asked Jessie Chittenden to get the papers and Jessie Chittenden brought the papers, contestant's exhibit 1, from out of a drawer and placed them on the table. My husband said, 'I would like to know what it is before I sign my life away,' and he picked up the papers to read them. Then he read them aloud. When he had finished he said, 'It does sound like a will Aunt Nell,' and she replied that it was her will. Nellie F. Gilham then signed it and I signed it and Jessie Chittenden and my husband signed. I used the pen that had been used by Nellie F. Gilham. My husband used a fountain pen. When we had all signed, Jessie Chittenden held the will before a fire to dry the ink. My husband then left the house and I remained the rest of the day.'' Comparing the testimony of each of those witnesses with that of each of the others, it will be seen that there is an astonishing similarity in detail that might impress any jury as indicating fabricated testimony. Furthermore, Mr. Geiger and Mrs. Chittenden testified that Mr. Geiger used a fountain pen but that Mrs. Gilham, Mrs. Geiger, and Mrs. Chittenden used the same pen and the same ink. Mr. McGovern testified that the name Nellie F. Gilham was not entirely written

with the same ink. By stipulation of counsel the will was produced at the oral argument. An inspection of the signature with the naked eye discloses at least two different inks. The extreme terminal of the name "Nellie" is decidedly reddish in color, whereas all of the rest of the signature is black in color. Therefore it may not be said that the witnesses for the defendant were not discredited.

Mr. McGovern, one of the witnesses for the contestant, was examined and cross-examined at length. He testified that the signature, Nellie F. Gilham, was a "clumsy forgery". In explanation of that statement he gave many different reasons, all of which tend to impress one favorably who reads the testimony. There were introduced in evidence many checks written by the decedent either shortly before the date of the alleged execution of the purported will or shortly thereafter. These exemplars show that Mrs. Gilham wrote a firm, well-formed hand that was altogether masculine in appearance. Although she was admitted to be of the age of seventy-seven years or thereabouts, her signature has the appearance of one in middle life. The signature attached to the will distinctly varies from each and all of the exemplars in this, "Nellie F. G" is the trembling hand of one in her dotage, but the terminal "ilham" is firm and flowing in appearance. After the signature on the will appears a period. At no other time did it appear that the decedent ever used a period when writing her signature. The exemplars, in themselves, were some evidence to the effect that the signature at the end of the will was not genuine.

The contestant was called as a witness in his own behalf. Among other things he testified: "I am and have been for many years last past familiar with my mother's signature— Mrs. Nellie F. Gilham. I do not believe the signature Nellie F. Gilham to said purported will is my mother's signature or was written by her."

In view of what appears above, it will suffice to state that, in our opinion, it may not be said there was not substantial evidence in support of the verdict. Under these circumstances the verdict may not be disturbed on appeal. (2 Cal. Jur., pp. 918–935.)

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.